William M. Fitzgerald, Esq.
LAW OFFICES OF WILLIAM M. FITZGERALD
Second Floor, Macaranas Building
PMB 738, P.O. Box 10,000
Beach Road, Garapan
Saipan, Mariana Islands 96950
Telephone:   (670) 234-7241
Facsimile:   (670) 234-4530
E-mail:       fitzgerald.law@gmail.com

MARK B. HANSON, ESQ.
Second Floor, Macaranas Building
PMB 738, P.O. Box 10,000
Beach Road, Garapan
Saipan, Mariana Islands 96950
Telephone:   (670) 233-8600
Facsimile:   (670) 233-5262
E-mail:       mark@saipanlaw.com

BRUCE BERLINE, ESQ.
Second Floor, Macaranas Building
P.O. Box 5682 CHRB
Beach Road, Garapan
Saipan, Mariana Islands 96950
Telephone:   (670) 233-3663
Facsimile:   (670) 233-5262
E-mail:       bruce@saipanlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

SAMIRA I. SAURES, for herself and as guardian *ad* )   CASE NO. CV 12- 12- 0031
*litem* for TAMIM TAZ RASHID, a minor child,        )
                                                    )
                        Plaintiffs,                 )
                                                    )   COMPLAINT
              vs.                                   )
                                                    )   DEMAND FOR JURY TRIAL
INTERPACIFIC   RESORTS   (SAIPAN)                    )
CORPORATION,   a   Commonwealth   of   the          )
Northern   Mariana   Islands   corporation   doing  )
business as PACIFIC ISLANDS CLUB - SAIPAN,          )
and DAN K. THAPA and YUE WANG, individuals          )
currently   residing   in   the   Commonwealth of the )
Northern Mariana Islands and DOES 1-10,             )
                                                    )
                        Defendants.                 )
_____)

COMES NOW, SAMIRA I. SAURES, for herself and as guardian *ad litem* for TAMIM TAZ RASHID, a minor child, with the following Complaint against INTERPACIFIC RESORTS (SAIPAN) CORPORATION, DAN K. THAPA and YUE WANG and DOES 1-10:

JURISDICTION

1. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), including the Pregnancy Discrimination Act of 1978 and the Civil Rights Act of 1991, applies to this matter through the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, §502(a)(2).

2. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981a(a)(1) and the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. The Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1337(a) (proceedings arising under any Act of Congress regulating commerce).

4. Venue is properly placed in this Court as at all times relevant to Plaintiff's claims herein, Plaintiff was employed by Defendant in Saipan, Commonwealth of the Northern Mariana Islands ("CNMI"), the CNMI is the jurisdiction in which the unlawful employment practices of Defendant occurred and the CNMI is the jurisdiction in all tortious conduct alleged in this Complaint took place. *See* 28, U.S.C. § 1391(b)(2); 42 U.S.C. § 2000e-5(f)(3).

PARTIES

5. Plaintiff Samira I. Saures ("SAMIRA") is a citizen of Bangladesh and a legal permanent resident of the United States currently residing in Saipan, Commonwealth of the Northern Mariana Islands.

6. At all times relevant to SAMIRA's claims herein, SAMIRA was an "employee" of Defendant PIC within the meaning of Section 701(f) of Title VII, 42 U.S.C. § 2000e(f).

7. SAMIRA is also the guardian *ad litem* for plaintiff Tamim Taz Rashi ("TAMIM").

8. TAMIM is the natural son of SAMIRA. He is an infant born prematurely on April 25, 2009 in Saipan, CNMI. TAMIM is also currently residing in Saipan, CNMI in the care and custody of SAMIRA and his natural father, Mohammed Humayun Rashid.

9. Defendant InterPacific Resorts (Saipan) Corporation is a CNMI corporation with its principal place of business in Saipan, CNMI, and doing business as Pacific Islands Club – Saipan ("PIC").

10. Defendant Dan K. Thapa ("THAPA") was an employee of PIC at all times relevant to Plaintiffs' allegations of discrimination, unlawful employment practices and tortious conduct herein.

11. Defendant Yue Wang ("WANG") was an employee of PIC at all times relevant to Plaintiffs' allegations of discrimination, unlawful employment practices and tortious conduct herein.

12. At all times relevant to SAMIRA's claims herein, PIC was an "employer" within the meaning of Section 701(b) of Title VII, 42 U.S.C. § 2000e(b).

13. Upon information and belief, at all times relevant to SAMIRA's claims herein, PIC employed more than 200 employees.

14. At all times relevant to SAMIRA's claims herein, PIC was engaged in an industry affecting commerce within the meaning of Sections 701(g) and (f) of Title VII, 42 U.S.C. §§ 2000e(g) and (f).

15. Upon information and belief, there exists one or more additional defendants (the "Doe Defendants") who's identities are not presently known to Plaintiffs, which individuals were managers, supervisors, employees and agents of PIC acting within the scope of their employment and/or the authority of their agency with regard to Plaintiffs' and related to Plaintiffs' claims for unlawful employment practices and tortious conduct alleged herein. Upon ascertaining the true identities of the Doe Defendants, Plaintiffs intend to file an amended complaint which will identify them more specifically.

16. All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, employee or under the direction and control of

Page 3 of 12

the other, except as otherwise specifically alleged. The alleged acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved and/or ratified the other Defendants' unlawful acts and omissions alleged in this Complaint. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

FACTS

17.  SAMIRA began her employment with PIC on about March 15, 2008 as a cashier and waitress in PIC's resort hotel in Saipan.

18.  At the beginning of her employment with PIC, SAMIRA was assigned by PIC's food and beverage manager as a cashier at the Magellan Restaurant, one of PIC's restaurants.

19.  The Magellan Restaurant manager, however, did not like Bangladeshi to work as cashier, so the Magellan Restaurant manager re-assigned SAMIRA to work as a waitress/food runner at the Magellan Restaurant, thereafter hiring and assigning persons from the Philippines and other non-Bangladeshi employees as cashiers.

20.  SAMIRA did work from time to time as a cashier at Magellan Restaurant as originally hired and trained, indicating that she was known by PIC to be qualified for the job.  On more than one of those occasions, SAMIRA was given cashier's duties for a shift because she was Muslim and the Magellan Restaurant manager and supervisors wanted to give a non-Muslim the day off for a particular day.

21.  While working as a waitress/food runner, and occasionally as a cashier, SAMIRA was subject to constant harassment because of her race, national origin and her religion, including being subject to comments and racial slurs by co-workers such as: "you bloody Bangladshi"; "you dark Muslim communist"; "You Bangladshi people are stupid"; "Fuck you bloody Bangladshi, bloody Muslim, fake Muslim"; implying that SAMIRA is a Muslim "only for show"; and being told that

Page 4 of  12

"Henry [Magellan Restaurant manager] does not like Bangladeshis as cashiers because they are not good at math and English."

22. While working as a waitress/food runner, and occasionally as a cashier, SAMIRA was subject to constant harassment because of the lighter duties assigned her due to her pregnancy, harassment that included being subject to comments such as "crazy pregnant lady," co-workers' vocal complaints and physical abuse to SAMIRA because of her doctor-ordered lighter duties, and a co-worker's opinion that such mental and physical abuse of SAMIRA "is the right treatment for you bitch."

23. Defendants' constant harassment of SAMIRA often included physical abuse and assault and battery by other employees, including being subject to such physical contact and abuse such as: tripping and stomping on feet, pushing, shoving, slapping on the back, the throwing of objects and, on one particularly egregious occasion that led to a hospital stay for SAMIRA, the shoving of a table into SAMIRA's pregnant belly.

24. Defendants' constant harassment of SAMIRA also included purposely changing work schedules without informing SAMIRA, causing SAMIRA constant issues with scheduling day care for her children and the expense and annoyance of driving to work only to find out that her scheduled was changed and she was not informed.

25. Defendants' constant harassment of SAMIRA also included employees and supervisors accusing SAMIRA of being in a "sham marriage" because her last name is Saures — a Carolinian surname.

26. Defendants' constant harassment of SAMIRA also included repeated threats of termination by supervisors for complaining about the harassment SAMIRA was forced to endure while working at the Magellan Restaurant of PIC.

27. From early on in her employment with PIC through her eventual separation from her employment with PIC, SAMIRA repeatedly reported her harassment by co-workers and supervisors

to other supervisors and PIC management, including at least two reports SAMIRA made to PIC's Director of Human Resources.

28.   Despite her repeated pleas for corrective action by PIC supervisors and managers, SAMIRA continued to be harassed by her coworkers and Magellan supervisors.

29.   In about August 2009, after SAMIRA had given birth to TAMIM and after a period of maternity leave, SAMIRA returned to work at PIC.   Instead of returning to the continuing harassment she endured at Magellan Restaurant, SAMIRA requested reassignment to the pastry bakery or another department of PIC.

30.   PIC's F&B Manager and PIC's Executive Chef agreed to place SAMIRA as a pastry assistant in PIC's kitchen.  However, on August 7, 2009, after only four days of SAMIRA training as a pastry assistant, the Magellan Restaurant management, including supervisors that had participated in her harassment while working there, caused SAMIRA's position to be transferred back to waitress/food runner at Magellan Restaurant.

31.   On August 7, 2009, SAMIRA was constructively discharged by PIC because of the untenable, harassing workplace that PIC allowed to exist and thrive, a harassing workplace to which SAMIRA was continually subject and a harassing workplace to which PIC was forcing her to return.

32. All of PIC's employees, supervisors and managers actions and inaction towards SAMIRA were unlawful discriminatory conduct attributable to PIC.

33.   All of PIC's discriminatory actions and omissions alleged above were intentional within the meaning of 42 U.S.C. § 2000e-5(g)(1).

34.   All of PIC's discriminatory actions and omissions alleged above were engaged in by PIC with malice and/or with reckless indifference to the federally protected rights of SAMIRA within the meaning of 42 U.S.C. § 1981a(b)(1).

35.   On about October 21, 2009, SAMIRA filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that PIC had discriminated against

her in her employment with PIC because of her national origin, because of her religion and because she was pregnant and because PIC knew of and allowed an harassing work environment to exist wherein PIC's employees and supervisors, including individual defendants named herein, harassed Plaintiff because of her race, color, religion, national origin and because she was pregnant.

36. On September 12, 2012, the EEOC issued to SAMIRA a Notice of Right to Sue with SAMIRA received on September 19, 2012.

FIRST CAUSE OF ACTION
UNLAWFUL EMPLOYMENT PRACTICES
(SAMIRA againts PIC)

37. SAMIRA incorporates paragraphs 1 through 36 above as if fully set forth herein.

38. Title 42, Section 2000e-2(a) of the United States Code makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin;

> (2) or to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin.

39. Pursuant to 42 U.S.C. § 2000e-2(m), an unlawful employment practice is established when the complaining party demonstrates, among other things, that race, color, religion, sex and/or national origin was a motivating factor for any employment practice, even though other factors may have also motivated the practice.

40. Title 42, Section 2000e(k) defines the terms "because of sex" and "on the basis of sex" to include: "on the basis of pregnancy, childbirth, or related medical conditions."

41. Section 2000e(k) goes on to require that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their

1  ability or inability to work. . . ."

2  42. SAMIRA was, at all times relevant to her claims herein, a member of a class protected by

3  the Title VII, including the provisions of the Pregnancy Discrimination Act thereof.

4  43. SAMIRA was, at all times relevant to her claims herein, qualified for the position she held

5  with PIC and/or for another position with PIC.

6  44. At all times relevant to her claims herein, SAMIRA adequately performed her job with

7  PIC.

8  45.  On August 7, 2009, SAMIRA was constructively discharged by PIC because of the

9  untenable, harassing workplace that PIC allowed to exist and thrive, a harassing workplace to which

10  SAMIRA was continually subject, a harassing workplace that constituted an unlawful employment

11  practice based on race, color, religion, sex and national origin discrimination all in violation of 42

12  U.S.C. §§ 2000e-2(a), (m) and § 2000e(k).

13  46.  PIC's unlawful, discriminatory conduct was willful, intentional and was with malice

14  and/or with reckless disregard to SAMIRA's federally protected rights.

15  47.  Pursuant to 42 U.S.C. § 2000e-5(g)(1), SAMIRA is entitled to reinstatement and an

16  award of back pay and other equitable relief as the Court may determine.

17  48.  Pursuant to 42 U.S.C. § 1981a, and in addition to the remedies to which she is entitled

18  pursuant to 42 U.S.C. § 2000e-5, SAMIRA is entitled to compensatory and punitive damages for

19  PIC's unlawful, discriminatory conduct in an amount to be determined by a jury after a trial on the

20  merits of SAMIRA's claims.

21  49.  Pursuant to 42 U.S.C. § 2000e-5(k), SAMIRA is also entitled to her costs, including

22  expert costs and reasonable attorney's fees.

23  SECOND CAUSE OF ACTION
24  TORTIOUS INJURY
   (TAMIM againts all Defendants)

25  50. SAMIRA incorporates paragraphs 1 through 49 above as if fully set forth herein.

26

27

51. TAMIM's mother, SAMIRA, began working for the PIC in March 2008.

52. During the time that SAMIRA worked for the PIC, she was subjected to severe verbal and physical abuse by the defendants THAPA and WANG.

53. THAPA on repeated occasions referred to SAMIRA as a "bloody Bangladesh," a "dark Muslim" and a "bloody Muslim."

54. THAPA told Sumira that she hated her and that she was stupid.

55. SAMIRA repeatedly reported this abusive behavior and harassment to PIC management, but PIC did nothing to stop it.

56. In October 2008, SAMIRA became pregnant and the harassment by THAPA, now joined by WANG, intensified.

57. WANG, repeatedly and on a regular basis, punched and hit SAMIRA.

58. THAPA and WANG began to refer to SAMIRA as "crazy pregnant lady bitch and black Muslim."

59. SAMIRA again complained to PIC management, but they did nothing.

60. Finally, in March 2009, while SAMIRA was sitting at a table folding napkins, WANG pushed the table into SAMIRA's pregnant stomach which caused pain and numbness so severe that SAMIRA had to be taken to the Commonwealth Health Center by ambulance where she stayed until 4:00 a.m.

61. SAMIRA did not immediately return to work at the PIC after her hospitalization.

62. On April 25, 2009, as a direct and proximate result of the intentional and malicious and/or negligent acts of THAPA and WANG which had been allowed to go on undeterred and unpunished by PIC management, TAMIM was delivered seven weeks premature and was found to be suffering from severe and permanent damage to his gastrointestinal system, which injuries have left TAMIM permanently disabled.

63. The actual and proximate cause of TAMIM's injuries was the ongoing harassment and physical assault and battery of TAMIM's mother, SAMIRA, which harassment, assault and battery resulted from the failure of PIC to provide a safe work environment and allow THAPA and WANG to physically and mentally abuse SAMIRA.

64. Because of the intentional and reckless conduct of Defendants, TAMIM has incurred and will in the future incur substantial medical and hospital expenses and cost of living expenses resulting from his injuries all to his damage in an amount to be determined at trial.

65. TAMIM is, and will continue to be throughout his lifetime, dependent on others requiring constant and competent care all to his damage in an amount to be determined at trial.

PRAYER FOR RELIEF:

Accordingly, Plaintiffs pray for the following relief:

1. Reinstatement of SAMIRA to the same or a similar position;

2. Back pay from SAMIRA's last day of work to the date of her reinstatement;

3. Compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by a jury;

4. Punitive damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by a jury;

5. Damages for TAMIM's past, present and future medical and hospital expenses to be determined at trial;

6. Damages for TAMIM's increased cost of living expenses to be determined at trial;

7. Damages, general and extraordinary, for TAMIM's lost enjoyment of life and for his pain and suffering in an amount to be determined at trial;

8. Punitive damages to TAMIM for Defendants' reckless and outrageous conduct in an amount to be determined at trial;

9. An award of costs (including the cost of experts) and reasonable attorneys' fees; and

10. Any other relief the Court deems just and proper.

DATED this 18th day of December, 2012.

_____
MARK B. HANSON

Second Floor, Macaranas Building
PMB 738, P.O. Box 10,000
Beach Road, Garapan
Saipan, Mariana Islands 96950
Telephone:     (670) 233-8600
Facsimile:     (670) 233-5262
E-mail:        mark@saipanlaw.com

_____
BRUCE BERLINE

Second Floor, Macaranas Building
P.O. Box 5682 CHRB
Beach Road, Garapan
Saipan, Mariana Islands 96950
Telephone:     (670) 233-3663
Facsimile:     (670) 233-5262
E-mail:        bruce@saipanlaw.com

Attorneys for Plaintiffs

1

DEMAND FOR JURY TRIAL

2

Pursuant to Fed. R. Civ. P. 58(b) and 42 U.S.C. § 1981a(c), Plaintiffs hereby demand a trial

3

by jury on all of Plaintiffs' causes of actions and claims for relief stated in the above-Complaint.

4

DATED this 18th day of December, 2012.

5

6

7

MARK B. HANSON

8

Second Floor, Macaranas Building
PMB 738, P.O. Box 10,000

9

Beach Road, Garapan
Saipan, Mariana Islands 96950

10

Telephone:     (670) 233-8600
Facsimile:     (670) 233-5262

11

E-mail:          mark@saipanlaw.com

12

Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27